UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6247-CR-FERGUSON

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

WAYNE BRUTON,

    Defendant.
_____/

## DEFENDANT'S SUPPLEMENT TO MOTION FOR DOWNWARD DEPARTURE

The Defendant, Wayne Bruton, through undersigned counsel, files this supplement to defendant's motion for downward departure filed on April 13, 2001, and in support thereof, the defendant states:

### SUPPLEMENTAL FACTS

Mr. Bruton's proffer that the confidential source advised that he intended to sell fake cocaine to individuals from out of town is corroborated by a laboratory report provided in the government's discovery response, hereto attached as defendant's exhibit 2. Exhibit 2 represents a kilogram of fake cocaine which Mr. Bruton obtained at the request of the confidential informant.

Mr. Bruton further proffers that he made no profit, nor did he intend to profit from the two crack cocaine transactions at issue. Instead, Mr. Bruton lost money. The confidential source advised that he would reimburse Bruton for his expenditures after the fake cocaine was sold to the fictitious out of town visitors. The only consideration contemplated by Mr. Bruton was the confidential source's promise to purchase Bruton's Chevrolet Impala with the proceeds from the sale of the fake cocaine.

## SUPPLEMENTAL ARGUMENTS

### Sentencing Entrapment, Sentence Factor Manipulation or Imperfect Entrapment

In United States v. Sanchez, 138 F.2d 1410 (11th Cir. 1998), the court held that the fact that the government told the defendants that a large quantity of drugs would be found at the fictitious home invasion site did not amount to the type of manipulative governmental conduct warranting a downward departure at sentencing. However, the government's conduct in this case, specifically the conduct of the confidential source, is the type of manipulative and outrageous conduct which warrants a downward departure.

Unlike the Sanchez defendants who agreed to commit the home invasion robbery without any reluctance, Mr. Bruton resisted the government informant's initial request that he provide crack cocaine. In addition, it appears as though the government instructed the informant to go out and purchase crack cocaine without any directive as to any specific target or guidelines with respect to inducements. The informant concocted a story that he intended to sell fake cocaine to individuals from out of town and that he needed sample crack cocaine to carry out his scheme. Although Mr. Bruton provided the confidential source with crack cocaine, Mr. Bruton did not profit, nor intended to profit from the crack cocaine transactions. Finally, unlike the Sanchez defendants, Mr. Bruton has timely raised the issue of sentencing factor manipulation. Accordingly, this Court has the authority to consider whether the government's conduct in this case warrants a downward departure. See United States v. Bala, 236 F.3d 87 (2d Cir. 2000)(nothing in the Sentencing Guidelines prohibits a district court from considering government conduct that aggressively encourages wrongdoing although government's conduct is short of entrapment).

### Over-representation of Criminal History

Mr. Bruton seeks a departure along the vertical axis of the guideline table because the career

offender status over-represents the seriousness of his prior criminal record and the likelihood that he will commit further crimes. The two offenses which qualify Mr. Bruton as a career offender are a robbery which occurred at age 17 and a possession of cocaine with intent to deliver at age 20. The cocaine offense involved sixteen (16) pieces of crack cocaine. Mr. Bruton submits that this cocaine had a street value of $160.00 and thus represents a small quantity of cocaine. Mr. Bruton received a six year sentence as a youthful offender for the robbery conviction and a fifteen month sentence for the cocaine conviction.

In determining whether the career offender designation significantly over-represents the defendant's criminal history or the likelihood that the defendant will commit future crimes, a district court is permitted to make an individualized assessment of a number of factors. Such factors may include the age of the qualifying convictions, the defendant's age at the time the prior offenses were committed, the sentences imposed, the amount of time served on the sentences, and the amount of drugs involved in any prior controlled substance offense. See United States v. Mishoe, 241 F.3d 214, 219 (2nd Cir. 2001); United States v. Bowser, 941 F.2d 1019 (10th Cir. 1991); United States v. Senior, 935 F.2d 149 (8th Cir. 1991).

In Mishoe, the court the held that a district may include in its individualized consideration of factors which may warrant a downward departure from a career offender sentence the relationship between the degree of punishment imposed for prior offenses and the degree punishment prescribed for a career offender sentence. Mishoe, 241 F.3d at 220. The Mishoe court reasoned that in some cases, the large disparity in that relationship might indicate that the career offender sentence provides a deterrent effect so in excess of what is required in light of the prior sentences as to constitute a mitigating circumstance present to a degree not adequately considered by the Sentencing Commission. Id.

In this case, the career offender provision would provide for a minimum sentence of 188 months (15 years, 8 months) when Mr. Bruton only served a total of 39 months in prison for the convictions which qualify him as a career offender. See PSI ¶¶ 33 and 35. Mr Bruton respectfully submits that a sentence pursuant to the career offender guideline would provide an excessive deterrent effect in light of the Mr. Bruton prior sentences. Accordingly, Mr. Bruton is requesting that this court downward depart from the sentence prescribed by the career offender provisions of the Sentencing Guidelines.

### Outside the Heartland Departure Pursuant to USSG § 5K2.0

Mr. Bruton submits that there are circumstances in this case which are present to such an unusual degree which distinguishes this case from the heartland of cases covered by the guidelines, although none of the circumstances standing alone may warrant departure. These circumstances include the government's conduct during the investigation, Mr. Bruton's lack of intent to profit from the transactions and Mr. Bruton's difficult and troubled youth. As the Supreme Court has noted, USSG 5K2.0 is designed to allow district courts to "consider every convicted person as an individual and every case as a unique study in human failings that sometimes mitigate, and sometimes magnify, the crime and the punishment to ensue." Koon v. United States, 518 U.S. 81,113, 116 S. Ct. 2035, 2053 (1996).

In United States v.Coleman, 188 F. 3d 354, 359-60 (6th Cir. 1999), it was held that a district court was required to consider whether alleged improper investigatory techniques was a factor sufficiently atypical to remove it from the heartland of the relevant Guidelines. Id. at 358. The Coleman defendant was approached by an Alcohol, Tobacco and Firearms (ATF) agent who posed as a successful businessman and approached ex-felons as they were lawfully reporting to their parole office. Id. The ATF agent would befriend the parolees by offering them rides, trips and other

office. Id. The ATF agent would befriend the parolees by offering them rides, trips and other business opportunities. Id. The agent would then ask the parolees to purchase drugs or firearms for him. Coleman purchased crack cocaine at the request of the agent. Id.

At sentencing, Coleman asserted that the investigation improperly targeted African-Americans and parolees and therefore, removed his case from the heartland of drug offenses. Id. The district court found that Coleman's argument was not a sentencing issue, but rather a selective prosecution issue, and thus, improper basis for downward departure. The Sixth Circuit reversed finding that there existed a potentially infinite number of factors which may warrant a departure and that Koon made clear that a court may not categorically exclude consideration of any one factor. Id. at 358. Accordingly, this Court can consider the government's questionable conduct in this case in determining whether a downward departure is warranted.

In addition, Mr. Bruton would ask this court to consider the fact that he did not profit, nor intended to profit from the crack cocaine transactions at issue in this case. Mr. Bruton submits that the fact that he did not intend to gain any financial benefit from the cocaine transactions is an unusual factor not adequately taken into consideration by the Sentencing Commission in the formulation of the guidelines. Mr. Bruton requests that the Court consider this factor in determining whether a sentence below the otherwise applicable guidelines is warranted in this case.

**Conclusion**

Mr. Wayne Bruton respectfully requests that this Court grant his Motion for Downward

Departure and impose a sentence which is consistent with the facts and arguments set forth above.

                Respectfully submitted,

                KATHLEEN M. WILLIAMS
                FEDERAL PUBLIC DEFENDER

By:

                Daryl E. Wilcox
                Assistant Federal Public Defender
                Attorney for Defendant
                Florida Bar No. 571962
                1 East Broward Blvd., Suite 1100
                Fort Lauderdale, Florida 33301
                (954) 356-7436 / 356-7556 (Fax)

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing instrument was mailed and faxed this 23rd day of April, 2001 to Terrence Thompson, Assistant United States Attorney, 500 East Broward Boulevard, 7th Floor, Fort Lauderdale, Florida, 33301 and Diedre Pratt, United States Probation Officer, 299 East Broward Boulevard, Room 409, Fort Lauderdale, Florida 33301.

Daryl E. Wilcox

# REPORT OF DRUG PROPERTY COLLECTED, PURCHASED OR SEIZED

U.S. Department of Justice — Drug Enforcement Administration

Read instructions on reverse before completing.

**1. OBTAINED (Check):** ☐ Purchase ☒ Seizure ☐ Free Sample ☐ Lab. Seizure ☐ Money Flashed ☐ Compliance Sample (Non-Criminal) ☐ Internal Body Carry ☐ Other (Specify)

**2a. FILE NO.:** [redacted]
**2b. PROGRAM CODE:**
**3. G-DEP ID:** [redacted]

**4a. WHERE OBTAINED (City, State/Country):** Fort Lauderdale, FL/U.S.A.
**4b. DATE OBTAINED:** 03-29-2000
**5. FILE TITLE:** Wayne BRUTTON

**6a. REFERRING AGENCY (Name):** N/A
**6b. REFERRAL:** ☐ Case No. OR ☐ Seizure No.  No. N/A
**7. DATE PREPARED:** April 5, 2000
**8. GROUP NO.:** 3

| 9. Exhibit No. | 10. FDIN (10 characters) | 11. ALLEGED DRUGS | 12. MARKS OR LABELS (Describe fully) | APPROX. GROSS QUANTITY | | 15. Purchase Cost |
|---|---|---|---|---|---|---|
| | | | | 13. Seized | 14. Submitted | |
| 5 | | Unknown | Red packaging with "Presidente" in gold lettering on a black background; a small cut in packaging above "Presidente" made by defendant | | 1072.3 g | $00.00 |

**16. WAS ORIGINAL CONTAINER SUBMITTED SEPARATE FROM DRUG?** ☒ NO (included above) ☐ YES (if Yes, enter exhibit no. and describe original container fully)

**REMARKS:**
On 3/29/2000 the above exhibit was received from Wayne BRUTTON by FBI CS [redacted]. FBI CS# [redacted] transferred custody of Exhibit 5 to S/A Roche in the presence of S/A Felicioni. On the same date, S/A Roche processed, packaged, labeled, and sealed the exhibit in the presence of S/A Felicioni. On 3/29/2000, S/A Roche transferred custody of the exhibit to the FLDO Drug Evidence Custodian, who maintained custody of the exhibit until custody was transferred to the Southeast Regional Laboratory for proper weight and analysis.

**17. SUBMITTED BY SPECIAL AGENT (Signature):** Robert V. Felicioni
**18. APPROVED BY (Signature & Title):** G/S Steve Randerson

## LABORATORY EVIDENCE RECEIPT REPORT

**19. NO. PACKAGES:** 1 HSEE
**20. RECEIVED FROM (Signature & Date):** Robert V. Felicioni 4/12/00
**21. Print or Type NAME and TITLE:** Robert V. Felicioni, S/A
**22. SEAL:** ☐ Broken ☒ Unbroken
**23. RECEIVED BY (Signature & Date):** [signature] 4-12-2000
**24. Print or Type NAME and TITLE:** Fred Tah

## LABORATORY REPORT

**25. ANALYSIS SUMMARY AND REMARKS:**
Gross Wt: 1.073kg
Exhibit 5.01 contains benzocaine and lidocaine.    Net Wt: 998.7g
Exhibit 5.02 contains cocaine HCl and benzocaine.  Net Wt: 0.70g

112632

amp 5/30/00

| 26. Exhibit No | 27. Lab. No. | 28. ACTIVE DRUG INGREDIENT (Established or Common Name) | CONCENTRATION | | | 32. AMT. OF PURE DRUG | 33. RESERVE |
|---|---|---|---|---|---|---|---|
| | | | 29. Strength | 30. Measure | 31. Unit | | |
| 5.01 | 112632 | no controlled substances detected. | | | | | 997.9g |
| 5.02 | 112632 | cocaine hydrochloride | 81 | % | | 0.57g | 0.40g |

**34. ANALYST (Signature):** Walter R. Rodriguez  5-31-w
**35. TITLE:** Forensic Chemist
**36. DATE COMPLETED:** 5/24/00
**37. APPROVED BY (Signature & Date):** William D. Bradley 6/1/2000
**38. TITLE:** Laboratory Director
**39. LAB. LOCATION:** Miami, FL

DEA Form - 7 (Sept 1995)   Previous edition dated 4/90 may be used until stock is exhausted.   1 - Prosecution